[Civ. No. 1968. Third Appellate District.—May 8, 1919.]

ELLA KLEINECKE, Respondent, v. NORTH CONFI-
DENCE MINING AND DEVELOPMENT COMPANY
(a Corporation), et al., Appellants.

[1] CORPORATIONS—ACTION TO COMPEL TRANSFER OF STOCK ON BOOKS
—EVIDENCE—FINDING.—In an action by the holder of certificates
for certain shares of stock in a corporation to compel it to trans-
fer to plaintiff on its books and deliver to her a certificate cover-
ing said shares of stock, a finding of the trial court, based on
conflicting evidence, that the former owner of the certificates made
an absolute transfer of the shares of stock to plaintiff cannot be
disturbed on appeal.

[2] ID.—OPTION TO REPURCHASE—FAILURE TO EXERCISE—TERMINATION
OF CLAIM UPON SHARES.—Where the transferrer of such stock was
given an option to repurchase the same within a limited time, and
that time expired without any attempt on his part to take ad-
vantage of such option, he no longer had any claim upon the
shares.

APPEAL from a judgment of the Superior Court of Tuol-
umne County. George F. Buck, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. C. Webster for Appellants.

Frank W. Street and Horace M. Street for Respondent.

CHIPMAN, P. J.—Plaintiff brought the action to compel
the defendant corporation to transfer to her on its books, and
to deliver to her, a certificate for 47,156 shares of its capital
stock, of which she alleged she was the owner. The cause
was tried by the court without a jury and findings and judg-
ment were in favor of plaintiff. Defendants appeal from
the judgment on the grounds that the evidence is insufficient
to sustain the decision and that the decision is against law.

It appears from the findings of the court: Defendant cor-
poration is organized and existing under and by virtue of the
laws of the state of California, with a capital stock of seventy-
five thousand dollars, divided into seventy-five thousand shares
of the par value of one dollar each. On July 16, 1908, de-
fendant Chute borrowed six thousand dollars from plaintiff,
giving to her his promissory note for said sum, payable in

six months, with interest, and indorsed and delivered to plaintiff three certificates representing in the aggregate 47,156 shares of the capital stock of the defendant corporation, then owned by him, as security for the payment of said note. Some payments of interest were made by defendant Chute, and he received from plaintiff an additional loan and, on July 16, 1912, he executed and delivered to her his promissory note for $8,580, and plaintiff continued to hold said shares of stock as security for the payment of the latter note, the first note being destroyed. The court found that said security was, on May 10, 1915, worth no greater sum than ten thousand dollars.

The plaintiff testified: That, in 1913 she removed from Sonora to Berkeley; that, in the month of May, 1915, she visited her daughter, Mrs. C. P. Jones, in Sonora, and, on the 10th of May, met Mr. Chute at the house by appointment. She testified: "I said to him: 'Mr. Chute, I have a proposition to make to you in regard to this stock that I hold; I don't want it any more as security.' I had had so much trouble, and I didn't want to hold it any more with a string tied to it, I want it for my own. He said, 'Mrs. Kleinecke, anything you ask me to do I would do,' and after a few minutes he said, 'It would be necessary for you to have your papers with you to have a transaction of that kind.' I said, 'I have brought them with me for that purpose.' He said, 'This is no place to talk, so we will go inside.' We went inside the room he had occupied and there was a desk in the room; he went to the desk and sat down to it and I got the papers and handed them to him, that is, the note and other papers that were security, that is, the paper that he had written when he gave me the note stating that I was holding the certificates of stock as security. I had these two papers and gave them to him. He said, 'These papers must be destroyed.' I said, 'All right.' He said, 'You take these and destroy them.' . . . I took the note and went to the stove and burned the papers up; I went back into the room. . . . Mr. Chute said, 'If I give you this stock I want you to give me an option to repurchase it.' I said, 'Certainly, I would do that.' Then he went to work and figured up the amount that would be actually due me up to July 16, 1916, if the note hadn't been destroyed. The amount ran to something over twelve thousand dollars and I agreed to let him repurchase the stock from me for the

amount of twelve thousand dollars.    This option to repurchase
the stock to run until the fifteenth day of July, 1916.''    Wit-
ness said Mr. Chute gave her the following form of option,
which was in his handwriting:

"Know All Men by These Presents, That I ——, being the
owner of —— shares of stock in the —— do hereby agree
with —— to deposit the said shares ——of stock in escrow
in a bank at any time he may designate within a period of
(2) years from date upon the deposit by him or his assigns
to my credit in said designated bank, the sum of —— dol-
lars.''

The witness said she remained in Sonora two or three days
and then returned home and received from Mr. Chute a let-
ter, dated May 16, 1915, in which he wrote: "I will prepare
that option to purchase your stock and send it to you soon.
One of the parties told me yesterday, that if the weather
would clear up, that the matter would soon assume a definite
shape.''    Under date of June 6, 1915, defendant Chute wrote
to plaintiff as follows: "I will in all probability send you
form of option to sign so that you can sell your stock in a
short time and I can make a commission on the sale you un-
derstand.''    In a letter dated June 29, 1915, Chute wrote
plaintiff that he was hoping to sell the mine, and said: "I
want you to be able to sell your stock.''

On cross-examination, witness identified an affidavit made
by her, on August 25, 1916, in an action by C. S. Fitch against
the defendant corporation, in which she claimed ownership
of 52,156 shares of the stock of the corporation; and she also
identified a notice, dated November 24, 1915, filed in the Tuol-
umne County records, in which a similar claim was made.
The court found that these claims were made through mistake
of plaintiff's attorney, so far as five thousand shares were
concerned, she holding a certificate for that number of shares
as security on another matter.

Grace Jones, daughter of plaintiff, corroborated the latter's
testimony as to the burning of some papers in the stove on the
occasion of the visit of Chute to the house.

It appeared that Mr. Chute did not send to plaintiff a form
of option for her to execute nor did she prepare or sign one.
The option was to run to July 15, 1916.    Mr. Chute not hav-
ing exercised his right under it, plaintiff, some time after the
right had expired, commenced the action.    Defendant Chute

testified in his own behalf. His testimony as to what occurred on May 10, 1915, between him and plaintiff agreed in some particulars with that of plaintiff, but as to the destruction by burning of his note and the transfer of the shares of stock of the defendant company to her in discharge of his indebtedness, his testimony is in sharp conflict, being in effect that the status of the shares was not changed but remained in pledge and that what took place with reference to an option was, as he testified, with this understanding, that his ownership is unquestioned and that he did not sell to her this stock.

The court found that, on the tenth day of May, 1915, "plaintiff accepted from defendant Richard Chute said 47,156 shares of stock in full payment of said promissory note and plaintiff then and there surrendered said promissory note to said defendant as fully paid and discharged and plaintiff ever since on or about May 10, 1915, has been and now is the owner and the possessor of said shares of the capital stock of said defendant," the mining company; that defendant Richard Chute has no right or interest in said shares, but that they still stand upon the books of said company in his name; that, on April 18, 1917, plaintiff demanded of said mining company that it execute and deliver to her, in her name, its certificate for 47,156 shares of its capital stock, standing in the name of said Richard Chute, and that at the time said demand was made plaintiff presented to said mining company the said certificates held by plaintiff, representing said 47,156 shares, for cancellation upon the issuance of a new certificate or certificates, in the name of plaintiff, for said stock, but the said mining company refused to comply with said demand.

[1] The vital contested question of fact in the case was whether or not defendant Chute made an absolute transfer of the shares of stock to plaintiff in discharge of his indebtedness to her. The court found, on conflicting evidence, that he made such transfer. Under the settled rule we cannot disturb the finding, as it is supported by substantial evidence.

Appellants contend, under the principle stated in *Rohrle* v. *Stidger*, 50 Cal. 207, and other cases cited, that the transfer of the shares, May 10, 1915, "was by way of security and that the sale was not absolute." The evidence on which the court based its finding was that the sale was absolute, and the promissory notes which constituted the consideration were surrendered and destroyed as fully paid. [2] The option to repur-

chase was limited as to time of acting under it, and that time having expired without any attempt made to take advantage of it, the optionee no longer had any claim upon the shares.

Respondent makes the point that the agreement or option to purchase the stock, being for a sum over two hundred dollars, is invalid because not in writing (Civ. Code, sec. 1624); furthermore, that there was no consideration for the agreement nor was any part of the purchase price paid. No option was ever made in writing. In one of his letters Chute said he would send plaintiff a form of option for her to sign, but he did not send it. In other of his letters he wanted her to be able to sell her stock. As already stated, the verbal option expired July 15, 1916.

If the sale had been accompanied by an unconditional agreement to reconvey upon payment of the indebtedness, such condition as matter of defeasance might be established by parol. But there was evidence justifying the finding that no such condition was part of the transaction. The option, as we have seen, was given for a stated period of time and was never sought to be availed of.

We think the findings are supported by the evidence and that they support the judgment.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.